UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

STEPHANIE J. HARRIS,

                Plaintiff,

      V.

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.
_____

**REPORT AND RECOMMENDATION**

09-CV-1112
(NAM/VEB)

## I. INTRODUCTION

In September of 2006, Plaintiff Stephanie J. Harris filed applications for supplemental security income ("SSI") benefits and disability insurance benefits ("DIB") under the Social Security Act. Plaintiff alleged that she became unable to work on February 27, 2003, due to physical and mental impairments. The Commissioner of Social Security denied Plaintiff's applications.

Plaintiff, by and through her attorney, Peter M. Margolius, Esq., commenced this action on October 2, 2009, by filing a Complaint in the United States District Court for the Northern District of New York. (Docket No. 1). Plaintiff seeks judicial review of the Commissioner's decision pursuant to 42 U.S.C. §§ 405 (g) and 1383 (c)(3).

The Honorable Norman A. Mordue, Chief United States District Judge, referred this case to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(A) and (B). (Docket No. 15).

## II. BACKGROUND

The relevant procedural history may be summarized as follows:

Plaintiff applied for SSI benefits and DIB on September 21, 2006, alleging disability beginning on February 27, 2003. (T at 95-104).[1] The applications were denied initially and Plaintiff timely requested a hearing before an Administrative Law Judge ("ALJ"). A hearing was held on October 9, 2008, before ALJ Robert Ringler. (T at 22). Plaintiff appeared with an attorney and testified. (T at 24-52).

On November 25, 2008, ALJ Ringler issued a written decision denying Plaintiff's applications. (T at 14-21). The ALJ's decision became the Commissioner's final decision on August 12, 2009, when the Appeals Council denied Plaintiff's request for review. (T at 1-4).

Plaintiff, through counsel, timely commenced this action on October 2, 2009. (Docket No. 1). The Commissioner interposed an Answer on March 5, 2010. (Docket No. 7). Plaintiff filed a supporting Brief on May 3, 2010, (Docket No. 11), which was stricken from the record by the Honorable George H. Lowe, United States Magistrate Judge, for non-compliance with General Order No. 18 on June 3, 2010. (Docket No. 12).Plaintiff filed a corrected Brief on June 24, 2010.  (Docket No. 13).  The Commissioner filed a Brief in opposition on August 4, 2010. (Docket No. 14).

Pursuant to General Order No. 18, issued by the Chief District Judge of the Northern District of New York on September 12, 2003, this Court will proceed as if both parties had

---

[1] Citations to "T" refer to the Administrative Transcript.  (Docket No. 8).

accompanied their briefs with a motion for judgment on the pleadings.[2]

For the reasons that follow, it is respectfully recommended that the Commissioner's motion be granted, Plaintiff's motion be denied, and this case be dismissed.

### III. DISCUSSION

**A.    Legal Standard**

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir.1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir.1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); see Grey v. Heckler, 721 F.2d 41, 46 (2d Cir.1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir.1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford

---

[2]General Order No. 18 provides, in pertinent part, that "[t]he Magistrate Judge will treat the proceeding as if both parties had accompanied their briefs with a motion for judgment on the pleadings."

v. Schweiker, 685 F.2d 60, 62 (2d Cir.1982).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F.Supp. 147, 153 (S.D.N.Y.1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir.1984).

The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Social Security Act. See 20 C.F.R. §§ 416.920, 404.1520. The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.[3]

---

[3]This five-step process is detailed as follows:

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.

If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.

If the claimant has such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.

If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.

Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite

While the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n. 5; Ferraris v. Heckler, 728 F.2d 582 (2d Cir.1984).

The final step of the inquiry is, in turn, divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his or her physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §§ 416.920(g); 404.1520(g); Heckler v. Campbell, 461 U.S. 458, 460, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983).

**B.   Analysis**

   **1.   Commissioner's Decision**

The ALJ found that Plaintiff met the insured status requirements of the Social Security Act through June 30, 2005.  He further determined that Plaintiff returned to substantial gainful activity on February 2, 2008, and remained employed as of the date of his decision.[4]  As such, the matter was considered as an application for benefits for a closed period, namely, from February 27, 2003 (the alleged onset date) through February 2, 2008 (the date Plaintiff resumed substantial gainful activity).  (T at 16).

The ALJ concluded that Plaintiff had a left shoulder impairment, which he designated

---

the claimant's severe impairment, he has the residual functional capacity to perform his past work.

Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir.1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir.1999); 20 C.F.R. §§ 416.920, 404.1520.

[4]Plaintiff does not challenge this aspect of the ALJ's decision. See (Docket No. 13).

5

as a "severe" impairment under the Social Security Act. (T at 16). The ALJ found that Plaintiff's mental limitations (*i.e.* anxiety attacks) imposed only mild limitations in regard to activities of daily living; mild limitations of social functioning; and mild limitations with respect to concentration, persistence, and pace. (T at 17). As such, the ALJ concluded that Plaintiff's mental impairment was not a "severe" impairment, as defined under the Act. (T at 17).[5] The ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments found in 20 CFR Part 404, Subpart P, Appendix 1 (the "Listings"). (T at 18).

The ALJ concluded that Plaintiff retained the residual functional capacity to perform the full range of light work, as defined in 20 C.F.R. § 416.967 (b). (T at 18). He further found that Plaintiff could perform her past relevant work as a home health aide. (T at 20). Accordingly, the ALJ concluded that Plaintiff had not been under a disability between February 27, 2003, the alleged onset date, and February 2, 2008, the date she resumed substantial gainful activity. (T at 21). As noted above, the ALJ's decision became the Commissioner's final decision on August 12, 2009, when the Appeals Council denied Plaintiff's request for review. (T at 1-4).

### 2. Plaintiff's Claims

Plaintiff contends that the Commissioner's decision should be reversed. She offers two (2) principal arguments in support of that position. First, Plaintiff contends that the ALJ's residual functional capacity assessment is not supported by substantial evidence. Second, Plaintiff argues that the ALJ erred by finding that she could perform her past

---

[5]Plaintiff does not challenge this aspect of the ALJ's decision. See (Docket No. 13).

relevant work as a certified nurse's aide.  This Court will address both arguments in turn.

### a. RFC

Residual functional capacity ("RFC") is defined as: "what an individual can still do despite his or her limitations." Melville v. Apfel, 198 F.3d 45, 52 (2d Cir.1999).  "Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." Id.

When making a residual functional capacity determination, the ALJ considers a claimant's physical abilities, mental abilities, symptomatology, including pain and other limitations that could interfere with work activities on a regular and continuing basis. 20 C.F.R. § 404.1545(a).  An RFC finding will be upheld when there is substantial evidence in the record to support each requirement listed in the regulations. LaPorta v. Bowen, 737 F.Supp. 180, 183 (N.D.N.Y.1990).

As noted above, the ALJ concluded that Plaintiff retained the RFC to perform the full range of light work. (T at 18).  Plaintiff challenges this finding, pointing to several pieces of evidence, which she claims show a greater degree of limitation.  For example, a November 2005 office note from Dr. Lawrence Kusior, Plaintiff's treating physician, indicated that Plaintiff had "not been able to work since 2003." (T at 283).  In a December 2005 note, Dr. Kusior requested authorization for Plaintiff to receive job retraining through New York's Vocational and Educational Services for Individuals with Disabilities ("VESID") program. (T at 282).

Dr. Kusior again recommended VESID retraining in February of 2006, opining that

he "did not think" Plaintiff could return to her previous work as a nurse's aide. (T at 281). Dr. Kusior renewed the VESID request in April of 2006 and also recommended a functional capacity exam to determine alternative work that Plaintiff might be capable of performing. (T at 280). The doctor suggested that "lab work" might be appropriate. (T at 280).

Dr. Kusior reiterated these recommendations in a note dated June 7, 2006, and opined that Plaintiff had a "temporary partial disability." (T at 278). In July of 2006, Dr. Kusior again recommended VESID retraining and a functional capacity assessment, while characterizing Plaintiff's disability as "mild" and "partial." (T at 277). On February 27, 2007, the doctor indicated that a functional capacity exam would give him a "better assessment to see what function [Plaintiff] has, what she is capable and not capable of doing." (T at 346). In April of 2007, Dr. Kusior assessed Plaintiff's "scheduled loss" for Workers' Compensation purposes, giving her "a scheduled loss of 15%," representing "10% for the forward flexion deficit of 60%" and 5% for "impingement bursitis." (T at 344).

As outlined below, this Court finds the ALJ's RFC assessment to be supported by substantial evidence. Indeed, the RFC assessment is amply supported by the medical record, including Dr. Kusior's treatment notes.

On March 4, 2003, Plaintiff was treated for left shoulder pain of indeterminate origin. (T at 304-05). According to Plaintiff, the pain began on February 27, 2003. (T at 304). The treating doctor's impression was that Plaintiff had suffered a left shoulder strain. (T at 305). In June of 2003, MRI results revealed "no obvious surgical disease" and were reported as "normal." (T at 299-300). In that same month, Plaintiff reported that her left shoulder pain had improved and only occurred with "rare activities" and at night when she was "relaxing." (T at 299).

Dr. Kusior's treatment notes consistently described Plaintiff as having "full range of motion of the shoulder," "[e]xcellent strength," "[n]o apprehension," and "[n]o instability." (T at 278, 280-82, 344, 346). In February of 2003, Dr. Kusior opined that Plaintiff could "possibly" perform "light duty work," with "no lifting use of the left arm." (T at 294). An August 2004 note indicates that Plaintiff wanted to return to light duty work, but was unable to find any such employment. (T at 290). Dr. Kusior described Plaintiff's impairment as "mild," "partial," and "temporary." (T at 277-78).

Dr. Kusior offered differing opinions, but at various times indicated that Plaintiff could likely return to work as a certified nurse's aide (T at 282, 344), a job that Plaintiff described as requiring her to lift 100 pounds occasionally and 50 pounds frequently. (T at 140). The exertional requirements of this job are consistent with the Commissioner's definition of "very heavy work." 20 C.F.R. § 404.1567 (e)("Very heavy work involves lifting objects weighing more than 100 pounds at a time with frequent lifting or carrying of objects weighing 50 pounds or more."). The ability to perform work at this exertional level implies an ability to perform light work. Id. ("If someone can do very heavy work, we determine that he or she can also do heavy, medium, light and sedentary work."). In April of 2007, Dr. Kusior noted that Plaintiff had not "worked in a while," but explained that "some of this is certainly due to pregnancy recently." (T at 344).

Additional support for the ALJ's RFC assessment is found in the report provided by Amelita Balagtas, a consultative examiner. Dr. Balagtas examined Plaintiff and assessed "slight to moderate limitations in activities that require lifting, carrying, and reaching involving the left upper extremity." (T at 309). This assessment is consistent with the ALJ's conclusion that Plaintiff could perform light work. As defined under the Commissioner's

9

regulations, light work "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. §416.967(b).

It is well settled that an ALJ is entitled to rely upon the opinions of State agency medical consultants, since such consultants are deemed to be qualified experts in the field of social security disability. See 20 C.F.R. §§ 404.1512(b)(6), 404.1513(c), 404.1527(f)(2), 416.912(b)(6), 416.913(c), and 416.927(f)(2); see also Leach ex. Rel. Murray v. Barnhart, No. 02 Civ. 3561, 2004 WL 99935, at 9 (S.D.N.Y. Jan.22, 2004) ("State agency physicians are qualified as experts in the evaluation of medical issues in disability claims. As such, their opinions may constitute substantial evidence if they are consistent with the record as a whole."). Such reliance is particularly appropriate where, as here, the opinion of the examining State agency medical consultant is supported by the weight of the evidence. See Brunson v. Barnhart, 01-CV-1829, 2002 WL 393078, at *14 (E.D.N.Y. Mar. 14, 2002) (holding that opinions of non-examining sources may be considered where they are supported by evidence in the record).

Lastly, additional support for the ALJ's RFC assessment is found in evidence concerning Plaintiff's work and activities of daily living. The consultative psychiatric examiner reported that Plaintiff performed her own cooking, cleaning, laundry, and shopping. (T at 312). Plaintiff testified that she had no limitation with regard to sitting, standing, or walking. (T at 29-30). Although her condition had not improved since surgery in September 2005, Plaintiff began working as a home health aide in February 2008. (T at 31-32). Plaintiff worked 20 hours each weekend at this job. She cared for her young children during the week. (T at 30-33). In her job as a home health aide, Plaintiff assists patients getting into and out of bed, using a machine if the patient is particularly heavy. (T

at 37-38). Describing her responsibilities as a "light duty list," Plaintiff explained that she helped patients with their medications, attended to the trash, and administered nebulizer treatments. (T at 38-39).

This testimony concerning Plaintiff's work duties and activities of daily living is generally consistent with the ALJ's conclusion that Plaintiff retained the RFC to perform light work. Although much of the testimony concerned Plaintiff's activities after February 2, 2008 (*i.e.* after she resumed substantial gainful activity), Plaintiff testified that her exertional limitations were the same after that date as they were during the relevant time period. (T at 31-32). She also testified that her shoulder pain had not materially improved. (T at 31-32). As such, it was reasonable for the ALJ to conclude that Plaintiff's "condition and limitations have remained constant" and that her ability to "perform a home health aide job for twenty hours on the weekend and take care of an infant and toddler during the week" was indicative of an ability to perform work during the relevant time period. (T at 20).

In light of the foregoing, this Court finds that the ALJ's conclusion that Plaintiff retained the RFC to perform light work was supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971).

### b. Past Relevant Work

"[I]n the fourth stage of the SSI inquiry, the claimant has the burden to show an inability to return to her previous specific job and an inability to perform her past relevant work generally." Jasinski v. Barnhart, 341 F.3d 182, 185 (2d Cir. 2003) (citing SSR 82-62). A claimant is not disabled if she can perform her past relevant work, either as she actually

performed it, or as it is generally performed in the national economy. See SSR 82-61; Jock v. Harris, 651 F.2d 133, 135 (2d Cir.1981)(noting that "the claimant has the burden to show an inability to return to her previous specific job and an inability to perform her past relevant work generally").

"Determination of the claimant's ability to perform past relevant work requires a careful appraisal of (1) the individual's statements as to which past work requirements can no longer be met and the reason(s) for his or her inability to meet those requirements; (2) medical evidence establishing how the impairment limits ability to meet the physical and mental requirements of the work; and (3) in some cases, supplementary or corroborative information from other sources such as employers, the *Dictionary of Occupational Titles*, etc., on the requirements of the work as generally performed in the economy." Speruggia v. Astrue, No. 05-CV-3532, 2008 WL 818004, at *12-*13 (E.D.N.Y. Mar. 26, 2008).

Plaintiff argues that the ALJ erred by finding that Plaintiff could perform her past relevant work. In support of this argument, Plaintiff points to Dr. Kusior's conclusion that Plaintiff could not return to her past employment as a certified nurse's aide. (T at 281). This Court finds Plaintiff's argument unpersuasive. First, Dr. Kusior offered conflicting assessments on this point, indicating on more than one occasion that Plaintiff likely could return to work as a CNA. (T at 282, 344). As noted above, to the extent Dr. Kusior indicated that Plaintiff might be capable of returning to work as a CNA, his finding supported the ALJ's conclusion that Plaintiff could perform light work.

Second, the ALJ did not conclude that Plaintiff could perform her past relevant work as a CNA. Rather, he found that Plaintiff could perform her past relevant work as a home health aide. (T at 20-21). Plaintiff worked as a CNA prior to the application for benefits.

She began working as a home health aide in February 2008, while the application was pending.

The ALJ's finding that Plaintiff could perform her past relevant work as a home health aide was based upon Plaintiff's testimony concerning the extertional demands of the work as she actually performed it and the fact that Plaintiff had been performing the work on a part-time basis. Work performed after the alleged onset date, but prior to the date of the ALJ's adjudication of the claim, is properly considered "past relevant" work at step four of the sequential analysis. See Naegele v. Barnhart, 433 F. Supp.2d 319, 325 (W.D.N.Y. 2006)(citing SSR 82-62 and 20 C.F.R. § 404.1560(b)(1)). Of significance here was the fact that Plaintiff testified that her condition had not improved since September of 2005. (T at 31-32). In particular, Plaintiff said that her ability to lift had not improved. (T at 31). As discussed above, Plaintiff's ability to perform her job as a home health care aide beginning in February 2008 is relevant to the question of her capabilities during the closed period of alleged disability.

Plaintiff testified that she only worked because she needed the income to support her family. (T at 30). She further explained that she did not work full-time because she was "scared to hurt [her] shoulder again." (T at 30). The ALJ concluded that Plaintiff was only "somewhat credible." (T at 20). In support of this finding, the ALJ cited the evidence provided by Dr. Kusior (the treating physician) and Dr. Balagtas (the consultative examiner), as well as the fact that Plaintiff was able to successfully work as a home health aide for twenty hours per week (10 hours on each day of the weekend) and care for her young children during the week. (T at 20).

"It is the function of the [Commissioner], not [reviewing courts], to resolve evidentiary

conflicts and to appraise the credibility of witnesses, including the claimant." Carroll v. Secretary of Health and Human Servs., 705 F.2d 638, 642 (2d Cir.1983) (citations omitted). If there is substantial evidence in the record to support the Commissioner's findings, "the court must uphold the ALJ's decision to discount a claimant's subjective complaints of pain." Aponte v. Sec'y, Dep't of Health & Human Servs, 728 F.2d 588, 591 (2d Cir.1984) (citations omitted). Further, the ALJ has the benefit of directly observing a claimant's demeanor and other indicia of credibility, which thus entitles the ALJ's credibility assessment to deference. See Tejada v. Apfel, 167 F.3d 770, 776 (2d Cir.1999) (citing Pascariello v. Heckler, 621 F.Supp. 1032, 1036 (S.D.N.Y.1985)); see also Snell v. Apfel, 177 F.3d 128, 135 (2d Cir.1999).

There is no question that Plaintiff lives with pain, as the record documents frequent complaints in that regard. However, "disability requires more than mere inability to work without pain. To be disabling, pain must be so severe, by itself or in conjunction with other impairments, as to preclude any substantial gainful employment. Otherwise, eligibility for disability benefits would take on new meaning." Dumas v. Schweiker, 712 F.2d 1545, 1552 (2d Cir. 1983). Moreover, "[a]n individual's statement as to pain or other symptoms shall not alone be conclusive evidence [of disability]." 42 U.S.C. § 423(d)(5)(A).

In this case, Plaintiff's actual activities, the assessment of her treating physician, and the findings of the consultative examiner, all provide substantial support for the ALJ's conclusion that Plaintiff could perform her past relevant work as a home health aide and, thus, was not disabled within the meaning of the Social Security Act during the time period at issue.

## IV. CONCLUSION

After carefully reviewing the administrative record, this Court finds substantial evidence supports the Commissioner's decision, including the objective medical evidence and supported medical opinions. It is clear that the ALJ thoroughly examined the record, afforded appropriate weight to the medical evidence, including the assessments of Plaintiff's treating provider and the consultative examiner, and afforded the subjective claims of symptoms and limitations an appropriate weight when rendering his decision that Plaintiff is not disabled. This Court finds no reversible error and because substantial evidence supports the Commissioner's decision, this Court respectfully recommends that the Commissioner be GRANTED judgment on the pleadings and that Plaintiff's motion for judgment on the pleadings be DENIED.

Respectfully submitted,

Victor E. Bianchini
United States Magistrate Judge

Dated:   July 27, 2011
         Syracuse, New York

## V. ORDERS

Pursuant to 28 USC §636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, as well as NDNY Local Rule 72.1(c).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME, OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT ORDER BY THE DISTRICT COURT ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d. Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988); see also 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and NDNY Local Rule 72.1(c).

Please also note that the District Court, on *de novo* review, will ordinarily refuse to consider arguments, case law and/or evidentiary material *which could have been, but were not*, presented to the Magistrate Judge in the first instance. See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

SO ORDERED.
July 27, 2011

_____
Victor E. Bianchini
United States Magistrate Judge